**JOHN S. RANSOM, OSB #74265**
RANSOM BLACKMAN LLP
1400 Congress Center
1001 S.W. Fifth Avenue
Portland, Oregon 97204-1144
Telephone: [503] 228-0487
Facsimile: [503] 227-5984
E-mail: john@ransomblackman.com

FILED '05 FEB 28 14:59 USDC-ORP

Attorney for Defendant West Coast Medical Supply LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | CR No. **05-58-HA** |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **PETITION TO ENTER PLEA OF GUILTY, CERTIFICATE OF COUNSEL, AND ORDER** |
| **WEST COAST MEDICAL SUPPY LLC,** | ) ) | **ENTERING PLEA** |
| Defendant. | ) ) | |

The defendant represents to the court:

1.    My name is West Coast Medical Supply LLC.   I am 3 years old.  I have gone to school up to and including: N/A.

2.    My attorney is John S. Ransom.

3.    My attorney and I have discussed my case fully.  I have received a copy of the Information.  I have read the Information, or it has been read to me, and I have discussed it

Page 1  -   PETITION TO ENTER PLEA OF GUILTY

with my attorney. My attorney has counseled and advised me concerning the nature of each

charge, any lesser-included offense(s), and the possible defenses that I might have in this

case. I have been advised and understand that the elements of the charge(s) alleged against

me to which I am pleading "GUILTY" are as follows:

> In the District of Oregon West Coast Medical Supply LLC in 2002 - 2004
> engaged in a scheme to defraud Medicare by falsely representing if provided
> Durable Medical Equipment as represented to Medicare.

I have had a full and adequate opportunity to disclose to my attorney all facts known to me

that relate to my case.

4.      I know that if I plead "GUILTY," I will have to answer any questions that the

judge asks me about the offense(s) to which I am pleading guilty. I also know that if I

answer falsely, under oath, and in the presence of my attorney, my answers could be used

against me in a prosecution for perjury or false statement.

5.      I am not under the influence of alcohol or drugs. I am not suffering from any

injury, illness or disability affecting my thinking or my ability to reason except as follows:

_____ . I have not

taken any drugs or medications within the past seven (7) days except as follows:

_____ .

6.      I understand that conviction of a crime can result in consequences in addition

to imprisonment. Such consequences include deportation, or removal from the United

States, or denial of naturalization, if I am not a United States citizen; loss of eligibility to

receive federal benefits; loss of certain civil rights (which may be temporary or permanent

Page 2  -  PETITION TO ENTER PLEA OF GUILTY

depending on applicable state or federal law), such as the right to vote, to hold public office, and to possess a firearm; and loss of the privilege to engage in certain occupations licensed by the state or federal government.

7.     I know that I may plead "NOT GUILTY" to any crime charged against me and that I may persist in that plea if it has already been made.  I know that if I plead "NOT GUILTY" the Constitution guarantees me:

> a.     The right to a speedy and public trial by jury, during which I will be presumed to be innocent unless and until I am proven guilty by the government beyond a reasonable doubt and by the unanimous vote of twelve jurors;
>
> b.     The right to have the assistance of an attorney at all stages of the proceedings;
>
> c.     The right to use the power and process of the court to compel the production of evidence, including the attendance of witnesses in my favor;
>
> d.     The right to see, hear, confront, and cross-examine all witnesses called to testify against me;
>
> e.     The right to decide for myself whether to take the witness stand and testify, and if I decide not to take the witness stand, I understand that no inference of guilt may be drawn from this decision; and
>
> f.     The right not to be compelled to incriminate myself.

8.     I know that if I plead "GUILTY" there will be no trial before either a judge or a jury, and that I will not be able to appeal from the judge's denial of any pretrial motions I may have filed concerning matters or issues not related to the court's jurisdiction.

Page 3  -  PETITION TO ENTER PLEA OF GUILTY

9.      In this case I am pleading "GUILTY" under Rule 11(c)(1)(B). My attorney has explained the effect of my plea under Rule 11(c)(1)(B) to be as follows:

If the plea is pursuant to Rule 11(c)(1)(B):

> My plea of guilty is under Rule 11(c)(1)(B); therefore, although the judge will consider the recommendations and agreements of both the prosecution and defense attorneys concerning sentencing, the judge  is not obligated to follow those recommendations or agreements.  If the judge imposes a sentence different from what I expected to receive under the terms of my Plea Agreement with the prosecutor, I do not have a right to withdraw my plea.

10.      I know the maximum sentence which can be imposed upon me for the crime to which I am pleading guilty is N/A imprisonment and a fine of $500,000.

11.      I know that the judge, in addition to any other penalty, will order a special assessment as provided by law in the amount of $400 per count of conviction.

12.      I know that if I am ordered to pay a fine, and I willfully refuse to pay that fine, I can be returned to court, where the amount of the unpaid balance owed on the fine can be substantially increased by the judge and I can be imprisoned for up to one (1) year.

13.      My attorney has discussed with me the Federal Sentencing Guidelines. I know that under the Federal Sentencing Guidelines, the sentencing judge will ordinarily select a sentence from within the guideline range.  If, however, a case presents unusual facts or other circumstances, the law permits the judge to depart from the guidelines and impose a sentence either above or below the guideline range.  Although most sentences will be imposed within the guideline range, I know that there is no guarantee that my sentence will be within the

guideline range.  If my attorney or any other person has calculated a guideline range for me, I know that this is only a prediction and that it is the judge who makes the final decision as to what the guideline range is and what sentence will be imposed.  I also know that a judge may not impose a sentence greater than the maximum sentence referred to in paragraph (10) above.

14.    I know from discussion with my attorney that, under the Federal Sentencing Guidelines, if I am sentenced to prison I am not entitled to parole.  I will have to serve the full sentence imposed except for any credit for good behavior that I earn.  I can earn credit for good behavior  in prison at a rate of up to 54 days for each year of imprisonment served.  Credit for good behavior does not apply to a sentence of one (1) year or less.

15.    I know that if I am sentenced to prison, the judge will impose a term of supervised release to follow the prison sentence.  During my supervised release term I will be supervised by a probation officer according to terms and conditions set by the judge.  In my case, a term of supervised release can be one (1) to five (5) years.  If I violate the conditions of supervised release, I may be sent back to prison for up to N/A.

16.    I know that in addition to or in lieu of any other penalty, the judge can order restitution payments to any victim of any offense to which I plead guilty.  I am also informed that, for certain crimes of violence and crimes involving fraud or deceit, it is mandatory that the judge impose restitution in the full amount of any financial loss or harm caused by an offense.  If imposed, the victim can use the order of restitution to obtain a civil judgment lien.  A restitution order can be enforced by the United States for up to twenty (20) years from the

Page 5  -  PETITION TO ENTER PLEA OF GUILTY

date of my release from imprisonment, or, if I am not imprisoned, twenty (20) years from the date of the entry of judgment. If I willfully refuse to pay restitution as ordered, a judge may resentence me to any sentence which could originally have been imposed.

17.    On any fine or restitution in an amount of $2,500 or more, I know that I will be required to pay interest unless that fine or restitution is paid within fifteen (15) days from the date of the entry of judgment.

18.    If I am on probation, parole, or supervised release in any other state or federal case, I know that by pleading guilty in this court my probation, parole or supervised release may be revoked and I may be required to serve time in that case, which may be consecutive, that is, in addition to any sentence imposed on me in this court.

19.    If I have another case pending in any state or federal court, I know that my Petition and Plea Agreement in this case do not, in the absence of an express and written agreement, apply to my other case(s), and that I can be faced with consecutive sentences of imprisonment.

20.    My plea of "GUILTY" is based on a Plea Agreement that I have made with the prosecutor. That Plea Agreement is attached hereto and incorporated herein. I have read or had read to me the Plea Agreement, and I understand the Plea Agreement.

21.    The Plea Agreement contains the only agreement between the United States government and me. No officer or agent of any branch of government (federal, state or local) or anyone else has promised or suggested that I will receive a lesser term of imprisonment, or probation, or any other form of leniency if I plead "GUILTY" except as stated in the Plea

Page 6   -   PETITION TO ENTER PLEA OF GUILTY

Agreement. I understand that I cannot rely on any promise or suggestion made to me by a government agent or officer which is not stated in writing in the Plea Agreement, or which is not presented to the judge in my presence in open court at the time of the entry of my plea of guilty.

22.     My plea of "GUILTY" is not the result of force, threat, or intimidation.

23.     I hereby request that the judge accept my plea of "GUILTY" to the following count(s): Count 1.

24.     I know that the judge must be satisfied that a crime occurred and that I committed that crime before my plea of "GUILTY" can be accepted. With respect to the charge(s) to which I am pleading guilty, I represent that I did the following acts and that the following facts are true:

> In the District of Oregon West Coast Medical Supply LLC in 2002 - 2004 engaged in a scheme to defraud Medicare by falsely representing if provided Durable Medical Equipment as represented to Medicare.

//

//

//

//

//

//

//

25.    I offer my plea of "GUILTY" freely and voluntarily and of my own accord and with a full understanding of the allegations set forth in the Information, and with a full understanding of the statements set forth in this Petition and in the Certificate of my attorney that is attached to this Petition.

SIGNED by me in the presence of my attorney, after reading (or having had read to me) all of the foregoing pages and paragraphs of this Petition on this 24th day of February, 2005.

WESTERN COAST MEDICAL SUPPLY LLC


Efiong E. Okon, President
Defendant

## CERTIFICATE OF COUNSEL

The undersigned, as attorney for defendant West Coast Medical Supply LLC, hereby certifies:

1.    I have fully explained to the defendant the allegations contained in the Information in this case, any lesser-included offense(s), and the possible defenses which may apply in this case.

2.    I have personally examined the attached Petition To Enter Plea of Guilty And Order Entering Plea, explained all its provisions to the defendant, and discussed fully with the defendant all matters described and referred to in the Petition.

3.    I have explained to the defendant the maximum penalty and other consequences of entering a plea of guilty described in paragraphs (6)-(20) of the Petition, and I have also explained to the defendant the applicable Federal Sentencing Guidelines.

4.    I recommend that the Court accept the defendant's plea of "GUILTY."

SIGNED by me in the presence of the above-named defendant, and after full discussion with the defendant of the contents of the Petition To Enter Plea of Guilty, and any Plea Agreement, on this 24th day of February, 2005.

_____
JOHN S. RANSOM
Attorney for Defendant

CERTIFICATE OF COUNSEL

## ORDER ENTERING PLEA

I find that the defendant's plea of GUILTY has been made freely and voluntarily and not out of ignorance, fear, inadvertence, or coercion. I further find the defendant has admitted facts that prove each of the necessary elements of the crime(s) to which the defendant has pled guilty.

IT IS THEREFORE ORDERED that the defendant's plea of GUILTY be accepted and entered as requested in this Petition and as recommended in the Certificate of defendant's attorney.

DATED this 28th of February, 2005, in open court.

ANCER L. HAGGERTY
Judge, U.S. District Court

ORDER ENTERING PLEA

**U.S. Department of Justice**

*United States Attorney*
*District of Oregon*
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

*Office: (503)727-1128*
*Fax: (503) 727-1117*
*DwightHolton@usdoj.gov*

February 8, 2005

Mr. John S. Ransom
1001 S.W. Fifth Avenue, Suite 1400
Portland, OR 97204-1144

Re:    United States v. West Coast Medical Supply

Dear Mr. Ransom:

The United States Attorney's Office (USAO) proposes that this matter be resolved as follows:[1]

1.    West Coast Medical Supply ("West Coast" or the "defendant") agrees to waive indictment and agrees to plead guilty to the charge set forth in the one count felony Information attached as Exhibit A.  The Information charges West Coast with health care fraud targeting the Medicare program, in violation of 18 U.S.C. § 1347.

2.    The charge in the Information carries a maximum penalty of a fine of $500,000 or twice the pecuniary gain derived by West Coast (18 U.S.C. § 3571), a term of probation of not less than one nor more than five years (18 U.S.C. § 3561(c)), and a $400 special fee assessment (18 U.S.C. § 3013).  The defendant agrees to pay the special assessment prior to sentencing.

3.    The defendant agrees that:

(A) West Coast was a company which was qualified by the Department of Health and Human Services as a provider of durable medical equipment, including but not limited to wheelchairs and power-operated vehicles known as "scooters," for Medicare beneficiaries.  West Coast was based in Portland, Oregon;

(B) During the period of approximately June 2002 through March 2004, West Coast sought reimbursement from the Medicare program for over $1 million for various durable medical equipment which West Coast claimed to have provided to Medicare beneficiaries during the period.

---

[1]This plea agreement is between this United States Attorney's Office and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority.  This agreement does not apply to any other charges other than those specifically mentioned herein.

John S. Ransom (on behalf of West Coast)
February 8, 2005
Page 2

       (C) On repeated occasions, West Coast sought and received reimbursement from Medicare for equipment which it never actually provided to recipients.  For example, West Coast sought reimbursement from Medicare for nearly 200 wheelchairs it claimed to have provided to Medicare beneficiaries, when in fact it West Coast provided nearly every one of these beneficiaries power-operated vehicles known as "scooters." Scooters are significantly less expensive to provide than wheelchairs and do not meet the medical requirements of persons in need of wheelchairs.

     4.     The parties agree that pursuant to <u>United States v. Booker/Fanfan</u>, 543 U.S. ___, 125 S.Ct. 738 (2005), the court must determine an advisory sentencing guideline range pursuant to the United States Sentencing Guidelines (USSG).  The court will then determine a reasonable sentence within the statutory range after considering the advisory sentencing guideline range and the factors listed in 18 U.S.C. § 3553.

     5.     Your client stipulates and agrees that the loss amount to be used in calculating its adjusted offense level under the United States Sentencing Guidelines is approximately $1,035,328.98.

     6.     The USAO will fully inform the PSR writer and the court of the facts and law related to defendant's case.  Except as set forth in this agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

     7.     Based on information known to the USAO at this time, the USAO estimates the likely adjusted offense level under the Sentencing Guidelines to be level 23, and that the defendant's culpability score is 5.  This calculation leads to a fine range of $1,600,000 to $3,200,000.  However, as set forth below in paragraph 9, the defendant must enter an agreement with the government both to repay the actual loss and pay certain fines.  Accordingly, in light of the civil agreement to resolve the defendant's liability, the government agrees that an additional criminal fine is not appropriate.

     8.     The Guidelines estimate set forth in paragraph 7 is not binding on the Probation Department or the Court.  If the Guidelines offense level determined by the Probation Department or the Court is different from the estimate, the defendant will not be entitled to withdraw the plea.

     9.     The defendant agrees to enter a Settlement Agreement, a copy of which is attached as Exhibit B, providing for full restitution and payment of  penalties to the Medicare health care plan.

John S. Ransom (on behalf of West Coast)
February 8, 2005
Page 3

10.     In exchange for the agreements set forth above, the USAO agrees to bring no further criminal charges against the defendant for its heretofore disclosed role in filing fraudulent claims for reimbursement from federal health plans undertaken during the time period 2001 through 2004.

11.     A designee of the defendant will, at the time of the guilty plea under the terms of this agreement, file with the Court a certified corporate resolution evidencing the authority of the designee to enter a plea on behalf of the defendant.

12.     Defendant knowingly, intelligently, and voluntarily waives its right to appeal its conviction in this case.  Defendant similarly knowingly, intelligently, and voluntarily waives its right to appeal the sentence imposed by the court, provided its sentence is no greater than the maximum estimated in paragraph 7.  In addition, defendant knowingly, intelligently, and voluntarily waives its right to bring a collateral challenge pursuant to 28 U.S.C. § 2255, against either its conviction, or the sentence imposed in this case, except for a claim of ineffective assistance of counsel.   The defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred on the date that this agreement is signed in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the defendant's plea is later withdrawn.

13.     This is the full agreement of the parties, and no further agreement should be inferred unless agreed to in writing.

Please discuss this proposed resolution with your client.  This offer remains open until February 15, 2005, at which time it is revoked.

Very truly yours,

KARIN J. IMMERGUT
United States Attorney

by: _____
DWIGHT C. HOLTON
Assistant United States Attorney

John S. Ransom (on behalf of West Coast)
February 8, 2005
Page 4

## **Acceptance of Plea Agreement**

## **United States v. West Coast Medical Supply**

I HAVE READ THIS AGREEMENT CAREFULLY AND REVIEWED EVERY PART OF IT WITH MY ATTORNEY. I UNDERSTAND AND VOLUNTARILY AGREE TO IT AS OUTLINED ABOVE. I AM PLEADING GUILTY BECAUSE I AM GUILTY.

DATE: 2/24/05

Designated Representative of West Coast
Medical Supply, on behalf of Defendant

I REPRESENT DEFENDANT WEST COAST MEDICAL SUPPLY AS ITS LEGAL COUNSEL. I HAVE CAREFULLY REVIEWED EVERY PART OF THIS AGREEMENT WITH DEFENDANT. TO MY KNOWLEDGE HIS DECISION TO ENTER INTO THIS AGREEMENT IS AN INFORMED AND VOLUNTARY ONE. I RECOMMEND THAT THE COURT ACCEPT AND FOLLOW THE AGREEMENT.

DATE: 2/24/05

JOHN S. RANSOM
COUNSEL FOR DEFENDANT

**EXHIBIT A**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CRIMINAL NO.  CR  05-** |
| **v.** | ) | |
| | ) | **FELONY** |
| | ) | **I N F O R M A T I O N** |
| | ) | **18 U.S.C.  § 1347      (Health Care Fraud)** |
| **WEST COAST MEDICAL SUPPLY** | ) | |
| **L.L.C.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### THE UNITED STATES ATTORNEY CHARGES:

### <u>Introduction and Overview</u>

At all times relevant to this Information

1.      The defendant **West Coast Medical Supply, L.L.C.,** ("West Coast") was an Oregon corporation owned an operated by Efiong Okon.

2.      Medicare is a federally funded health care plan that provides health insurance for elderly and some disabled Americans.  Medicare contracts health care professionals and suppliers of medical equipment to provide services to its beneficiaries at specified rates.  Medicare has established rules, policies and procedures governing the conduct of providers who contract with them; providers agree in their initial contracts with Medicare to abide by these rules, policies and procedures.

3.      In 2002, **West Coast** applied to become an authorized supplier of Durable Medical Equipment to beneficiaries of the Medicare program.  The term Durable Medical Equipment ("DME") refers to a broad array equipment ranging from motorized wheelchairs to specialized beds and mattresses and other equipment.  The **West Coast** application was granted in June 2002.

4.      The Medicare program establishes strict requirements governing when a physician may prescribe DME (that is, when a beneficiary is qualified), and when a medical supplier may appropriately bill for DME provided to a beneficiary.  These requirements are essential to prevent unnecessary provision of exceedingly expensive DME to beneficiaries – in other words, to prevent profiteering by physicians or medical supply companies through provision of DME to beneficiaries who are not actually eligible to receive them.

5.      Once approved as a supplier for Medicare beneficiaries, a medical supply company may seek reimbursement for DME provided to a Medicare beneficiary either by submitting a written form, or by filing electronically using billing software designated by the Medicare program.

6.      A Certificate of Medical Necessity (CMN) is also required before a provider may bill Medicare for certain medical equipment.   The medical equipment supply company must receive a signed CMN from the treating physician prior to submitting a claim to Medicare.

7.      A DME supplier may not submit a claim unless it has actually provided the equipment to the beneficiary.

8.      Certain Medicare beneficiaries are entitled to motorized wheelchairs due to their disability.  Motorized wheelchairs can be extremely expensive  - often costing nearly $5,000 per unit when bundled with other necessary equipment such as a specialized battery, and "anti-tipping" device, and other equipment.

9.      Some beneficiaries not eligible to receive motorized wheelchairs may be eligible to obtain power-operated vehicles known as "scooters."  Scooters are also extremely expensive equipment, although much less expensive than motorized wheelchairs: Medicare typically pays in the neighborhood of $2000 in reimbursement for scooters; the approximate wholesale price for a scooter ranges from $850 - $1000, depending on the model.

10.    Because of the risk of fraud, and in order to account for high-priced expenditures, Medicare has very specific requirements for reimbursing providers for high-priced DME, including motorized wheelchairs.  A CMN is required for motorized wheelchairs and the prescribing physician must certify that the patient, a) requires and uses a wheelchair to move around in their residence; b) has severe weakness of the upper extremities due to a neurologic, muscular, or cardiopulmonary disease/condition, and; c) is unable to operate any type of manual wheelchair.

### The Fraudulent Scheme and West Coast's Methods and Means Of Executing the Scheme

11.    On repeated occasions during the period June 2002 through March 2004, **West Coast** sought and received reimbursement from Medicare for wheelchairs it claimed to have provided beneficiaries when in fact it had provided those beneficiaries lower-cost scooters, reaping hundreds of thousands of dollars in excess reimbursement.  In some cases, beneficiaries were provided no equipment at all.

### COUNT 1: HEALTH CARE FRAUD
(18 U.S.C. § 1347)

12.    <u>Scheme and Artifice to Defraud.</u>  As outlined in detail in Paragraphs 1 - 11, which are realleged and incorporated as though set forth fully herein, **West Coast Medical Supply, L.L.C.** undertook a scheme by which it falsely represented to Medicare that it had provided Medicare beneficiaries with durable medical equipment when in fact, as **West Coast Medical Supply L.L.C.** knew, it had not provided the durable medical equipment as represented to Medicare.

13.     On or about and between June 2002 and March 2004, both dates being approximate and inclusive, the defendant **West Coast Medical Supply L.L.C.** knowingly and willfully executed a scheme and artifice to defraud a health care benefit program, namely Medicare, in connection with the payment for health care items.

DATED this _____ day of _____, 2005.

KARIN J. IMMERGUT
United States Attorney
District of Oregon


By:     DWIGHT C. HOLTON
Assistant United States Attorney

**EXHIBIT B**

SETTLEMENT AGREEMENT

I. PARTIES

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) (collectively the "United States"); and Efiong Okon ("Okon") and West Coast Medical Supply, LLC., ("West Coast") (hereafter referred to as "the Parties"), through their authorized representatives.

II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.    West Coast is incorporated under the laws of the State of Oregon.  At all relevant time periods, West Coast was in the business of furnishing durable medical equipment including motorized wheelchairs and electric scooters to individuals, including beneficiaries of the Medicare program.  At all relevant times, Okon has been the owner of West Coast.

B.    The United States contends that West Coast and Okon submitted or caused to be submitted claims for payment to the Medicare Program (Medicare), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg.

C.    The United States contends that it has certain civil claims against Okon and West Coast, as specified in Paragraph 2 below, for engaging in the following conduct during the period from June 2002 to March 2004: billing Medicare for durable medical equipment such as motorized wheelchairs or motorized scooters which was not medically necessary or was not,

in fact, provided; using certificates of medical necessity which were, in some instances, false, fraudulently obtained, or forged; and billing Medicare for more expensive durable medical equipment than was medically necessary or provided (hereinafter referred to as the "Covered Conduct").

       D.     The United States contends also that it has certain administrative claims, as specified in Paragraph 4 below, against Okon and West Coast for engaging in the Covered Conduct.

       E.     This Agreement is neither an admission of liability by Okon and West Coast nor a concession by the United States that its claims are not well founded.

       F.     To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties reach a full and final settlement pursuant to the Terms and Conditions below.

## III. TERMS AND CONDITIONS

       1.     Okon and West Coast agree to pay to the United States $2,070,658.00, representing double the claimed damages of $1,035,329.00 (the "Settlement Amount").  Okon and West Coast agree to pay the Settlement Amount as follows: Okon will immediately liquidate his 401K account with Intel Corporation and direct payment of the net proceeds to the United States Attorney's Office for the District of Oregon pursuant to electronic funds transfer instructions provided by that office; Okon will enter into a stipulated garnishment in the form attached hereto providing for the garnishment of his wages at Intel Corporation, or any other employer in the future while an outstanding balance remains to be paid, to the fullest extent permitted by law; Okon will withdraw his claims to 15703 Barrington Terrace, Tigard, Oregon;

Bank of America accounts 26728-15482, 26725-15597 and 21194-20231; Providence Health

System Federal Credit Union account 1009226; and Portland Teacher's Credit Union accounts

637411 and 635911. Okon agrees that the proceeds of the $10,000.00 Bank of America cashier's

check number 1001856398 seized from him on or about March, 2004 shall be applied to

satisfaction of this Agreement. Okon agrees to executing additional agreements or releases

necessary to accomplish the intent of this Paragraph. Okon agrees to fully advise the United

States Attorney's Office for the District of Oregon of any change in his financial circumstances

and will fully comply with financial reporting requirements imposed by that office providing,

inter alia, for periodic financial disclosures of his assets and liabilities.

     2.    Subject to the exceptions in Paragraph 3 below, in consideration of the

obligations of Okon and West Coast set forth in this Agreement, conditioned upon Okon's and

West Coast's full payment of the Settlement Amount, and subject to Paragraph 14 below

(concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this

Agreement), the United States (on behalf of itself, its officers, agents, agencies, and departments)

agrees to release Okon and West Coast from any civil or administrative monetary claim the

United States has or may have under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil

Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31

U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment,

and fraud, for the Covered Conduct.

     3.    Notwithstanding any term of this Agreement, specifically reserved and

excluded from the scope and terms of this Agreement as to any entity or person (including Okon

and West Coast) are the following:

a.      Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

c.      Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon such obligations as are created by this Agreement;

f.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

g.      Any civil or administrative liability of individuals (including current or former directors, officers, employees, agents, or shareholders of West Coast who receive written notification that they are the target of a criminal investigation (as defined in the United States Attorneys' Manual), are indicted, charged, or convicted, or who enter into a plea agreement related to the Covered Conduct.

4.      In compromise and settlement of the rights of OIG-HHS to exclude Okon and West Coast pursuant to 42 U.S.C. § 1320a-7(b)(7), and Okon, if convicted in case number ____ for a criminal offense related to the delivery of an item or service under Medicare or Medicaid, pursuant to 42 U.S.C. § 1320a-7(a)(1), Okon and West Coast agree to be permanently excluded under these statutory provisions from Medicare, Medicaid, and all other Federal health care programs as defined in 42 U.S.C. § 1320a-7b(f). Such exclusion shall have national effect

and shall also apply to all other Federal procurement and non-procurement programs. Federal health care programs shall not pay anyone for items or services, including administrative and management services, furnished, ordered or prescribed by Okon and West Coast in any capacity while Okon and West Coast are excluded. This payment prohibition applies to Okon and West Coast, anyone who employs or contracts with Okon or West Coast, any hospital or other provider where Okon or West Coast provide services, and anyone else. The exclusion applies regardless of who submits the claims or other request for payment. Okon and West Coast shall not submit or cause to be submitted to any Federal health care program any claim or request for payment for items or services, including administrative and management services, furnished, ordered, or prescribed by Okon or West Coast during the exclusion. Violation of the conditions of the exclusion may result in criminal prosecution, the imposition of civil monetary penalties and assessments, and an additional period of exclusion. Okon and West Coast further agree to hold the Federal health care programs, and all Federal beneficiaries and/or sponsors, harmless from any financial responsibility for items or services furnished, ordered, or prescribed to such beneficiaries or sponsors after the effective date of the exclusion. Okon and West Coast waive any further notice of the exclusion and agree not to contest such exclusion either administratively or in any state or federal court. This exclusion shall commence upon the Effective Date of this Agreement.

5. Okon has provided sworn financial disclosure statements (Financial Statements) to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Okon and West Coast warrant that the Financial Statements are complete, accurate, and current. In the event the United

States learns of asset(s) in which Okon or West Coast had an interest at the time of this

Agreement which were not disclosed in the Financial Statements, or in the event the United

States learns of any misrepresentation by Okon or West Coast on, or in connection with, the

Financial Statements, and in the event such nondisclosure or misrepresentation changes the

estimated net worth set forth on the Financial Statements by $50,000.00 or more, the United

States may at its option: (a) rescind this Agreement and file suit based on the Covered Conduct;

or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent

(100%) of the value of the net worth of Okon and West Coast previously undisclosed.  Okon and

West Coast agree not to contest any collection action undertaken by the United States pursuant to

this provision.

      6.     In the event that the United States, pursuant to Paragraph 5, above, opts to

rescind this Agreement, Okon and West Coast agree not to plead, argue or otherwise raise any

defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any

civil or administrative claims which (a) are filed by the United States within ninety (90) calendar

days of written notification to Okon and West Coast that this Agreement has been rescinded, and

(b) relate to the Covered Conduct, except to the extent these defenses were available on the

Effective Date of the Settlement Agreement.

      7.     Okon and West Coast waive and will not assert any defenses Okon or

West Coast may have to any criminal prosecution or administrative action relating to the Covered

Conduct, which defenses may be based in whole or in part on a contention that, under the Double

Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines

Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in

such criminal prosecution or administrative action. Okon and West Coast agree that this Agreement is not punitive in purpose or effect. Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

8.    Okon and West Coast fully and finally release the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which Okon and West Coast have asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

9.    The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary or any State payer, related to the Covered Conduct; and Okon and West Coast shall not resubmit to any Medicare carrier or intermediary or any State payer any previously denied claims related to the Covered Conduct, and shall not appeal any such denials of claims.

10.    Okon and West Coast agree to the following:

a.    <u>Unallowable Costs Defined</u>:  that all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47, and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg and 1396-1396v, and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Okon and West Coast, their present or former officers, directors, employees, shareholders, and agents in

connection with the following shall be "unallowable costs" on government contracts and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP):

(1) the matters covered by this Agreement and the related Plea Agreement,

(2) the United States' audit(s) and civil and criminal investigations of the matters covered by this Agreement,

(3) Okon's and West Coast's investigation, defense, and corrective actions undertaken in response to the United States' audits and civil and criminal investigations in connection with the matters covered by this Agreement (including attorney's fees),

(4) the negotiation and performance of this Agreement and the related Plea Agreement, and

(5) the payment Okon and West Coast make to the United States pursuant to this Agreement and any payments that Okon and West Coast may make to relators, including costs and attorneys' fees.

(All costs described or set forth in this Paragraph 10.a are hereafter "unallowable costs").

      b.    <u>Future Treatment of Unallowable Costs</u>: These unallowable costs shall be separately determined and accounted for by Okon and West Coast, and Okon and West Coast shall not charge such unallowable costs directly or indirectly to any contracts with the United States or any state Medicaid program, or seek payment for such unallowable costs through any cost report, cost statement, information statement, or payment request submitted by

Okon or West Coast or any of their subsidiaries or affiliates to the Medicare, Medicaid,

TRICARE, or FEHBP Programs.

                c.     <u>Treatment of Unallowable Costs Previously Submitted for</u>

<u>Payment</u>:  Okon and West Coast further agree that within 90 days of the Effective Date of this

Agreement it shall identify to applicable Medicare fiscal intermediaries, carriers, and/or

contractors, any unallowable costs (as defined in this Paragraph) included in payments previously

sought from the United States, or any State Medicaid Program, including, but not limited to,

payments sought in any cost reports, cost statements, information reports, or payment requests

already submitted by Okon and West Coast or any of their subsidiaries or affiliates, and shall

request, and agree, that such cost reports, cost statements, information reports, or payment

requests, even if already settled, be adjusted to account for the effect of the inclusion of the

unallowable costs.  Okon and West Coast agree that the United States, at a minimum, shall be

entitled to recoup from Okon and West Coast any overpayment plus applicable interest and

penalties as a result of the inclusion of such unallowable costs on previously-submitted cost

reports, information reports, cost statements, or requests for payment.

        Any payments due after the adjustments have been made shall be paid to the United

States pursuant to the direction of the Department of Justice, and/or the affected agencies.  The

United States reserves its rights to disagree with any calculations submitted by Okon and West

Coast or any of their subsidiaries or affiliates on the effect of inclusion of unallowable costs (as

defined in this Paragraph) on Okon and West Coast or any of their subsidiaries' or affiliates' cost

reports, cost statements, or information reports.

d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Okon's and West Coast's books and records to determine that no unallowable costs have been claimed in accordance with the provisions of this Paragraph.

11.     This Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 12 below.

12.     Okon and West Coast waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

13.     If, within 91 days of the Effective Date of this Agreement or of any payment made hereunder, Okon commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors, (a) seeking to have any order for relief of Okon's debts, or seeking to adjudicate Okon as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Okon or for all or any substantial part of Okon's assets, Okon agrees as follows:

a.  Okon's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. §§ 547 or 548, and Okon will not argue or otherwise take the position in any such case, proceeding, or action that: (1) Okon's obligations under this Agreement may be avoided under 11 U.S.C. §§ 547 or 548; (2)  Okon was insolvent at the time this Agreement was entered

into, or became insolvent as a result of the payment made to the United States hereunder; or (3) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Okon.

b. If Okon's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement, and bring any civil and/or administrative claim, action, or proceeding against Okon for the claims that would otherwise be covered by the release provided in Paragraph 2, above. Okon and West Coast agree that (1) any such claims, actions, or proceedings brought by the United States (including any proceedings to exclude Okon and West Coast from participation in Medicare, Medicaid, or other Federal health care programs) are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceeding described in the first clause of this Paragraph, and that Okon and West Coast will not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (2) that Okon and West Coast will not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding which are brought by the United States within 90 calendar days of written notification to Okon and West Coast that the releases herein have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the Effective Date of the Settlement Agreement; and (3) the United States has a valid claim against Okon and West Coast in the amount of $1,035,329.00, plus damages and penalties provided for pursuant to 31 U.S.C. §§ 3729-3733, and the United States may pursue its claim in the case, action, or

proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

           c. Okon acknowledges that his agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

      14.    Each Party to this Agreement shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

      15.    Okon and West Coast represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

      16.    This Agreement is governed by the laws of the United States.  The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement shall be the United States District Court for the District of Oregon.

      17.    This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

      18.    The individuals signing this Agreement on behalf of Okon and West Coast represent and warrant that they are authorized by Okon and West Coast to execute this Agreement.  The United States signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

      19.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

      20.    This Agreement is binding on Okon's and West Coast's successors, transferees, heirs, and assigns.

21.    All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

22.    The "Effective Date" of this Agreement shall be the date of signature of the last signatory to the Agreement.  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED:_____        BY:    _____

**ROBERT D. NESLER**
**Assistant United States Attorney**
**District of Oregon**

DATED:_____        BY:    _____

**LEWIS MORRIS**
**Chief Counsel to the**
 **Inspector General**
**Office of Inspector General**
**United States Department of**
 **Health and Human Services**

## OKON and WEST COAST - DEFENDANTS

DATED:_____       BY:     _____

                                **EFIONG OKON**
                                **Individually and on behalf of West Coast**


DATED:_____       BY:     _____

                                **JOHN S. RANSOM**
                                **Counsel for Okon and West Coast**